## JOSEPH THOMAS AND PENDLETON THOMAS *v.* THE STATE, 5 Howard, 20.

### BURGLARY.

The criminal court for the counties of Warren, Claiborne, Jefferson, Adams, and Wilkinson, established by the act of 1836, was a court of inferior and limited jurisdiction under the constitution, and one which the legislature was clearly empowered to establish by the 24th section of the 4th article of the constitution.

Since the passage of the act of 1836, to amend the jury laws, no challenge to the array shall be sustained, nor shall any *venire facias* be quashed by any court of justice in this state, for any cause whatsoever, except for corruption in the officer who may summon the jury.

Where the prisoner had been tried and convicted at the June term of the criminal court, and, for some cause, sentence of the law was delayed till the next term, and in the meantime, one of the counsel who had assisted the state on the trial, had been elected judge of said court, there is no legal objection to his sitting as judge in the case, and pronouncing the sentence of the law upon the prisoners, whatever may be the propriety or impropriety of such action.  The objection is one which cannot be raised and adjudicated in this court.

The plea of *non-identity* is to be pleaded *ore tenus*, and is never allowed except in cases where the prisoner has escaped after verdict and before judgment, or after judgment and before execution.  On review, to render the plea valid, the record must show an escape.

To constitute the crime of burglary, it is necessary that it should be committed in *the night time*, and whether, or not, there be light enough to distinguish a man's face, is immaterial to the offense.

It is the office of the caption of an indictment, to state with sufficient certainty, not only the style of the court, the judge there presiding, but the time and place, when and where it was found, and the names of the grand jurors by whom it was found.  Where the caption of the indictment, after stating the style of the court, and the term, proceeds to state that "the grand jury came into court and presented the following bill of indictment, and say they are content that the court shall alter therein anything, the same being matter of form and not of substance," it was held to be insufficient and uncertain, and the indictment should be quashed.

Where the statute creates several degrees of the same offense, and graduates the punishment according to the degrees, the verdict must designate the degree, or else no judgment can be pronounced.

Error to the criminal court of Adams County.

RAWLINGS, J. :

At the December term, 1837, of the criminal court, the plaintiffs in error were indicted for burglary.  The *venue* was changed to Jefferson county, and at June term, 1838, they were tried and found guilty.  Sentence was respited, and at December term following, when they were brought to the bar of the court to receive sentence, and were asked what they had to say why judgment should not be pronounced against them, they tendered their plea of *non-identity*, upon which issue was joined. After several fruitless efforts to procure a jury to try this question, the case was continued until the succeeding term ; at which the judge treated the plea as a nullity, and pronounced the usual sentence of death against the prisoners.

In the errors assigned, it was objected, 1st. That the criminal court which tried the prisoners, had no jurisdiction ; that the legislature had no authority to establish it, and, therefore, all its acts were void.

VOL. I.—11.

2d. The refusal of the court to set aside the special *venire facias* issued from the Jefferson Circuit Court.

3d. That the judges overruled the exception taken to his presiding in the case on the ground of bias and interest. He had, while practicing at the bar, been retained, and prosecuted as counsel on the part of the state, at the trial at a previous term.

4th. The court erred in striking out, and treating as a nullity, the plea of *non-identity* tendered by the accused, when asked what they had to say why the sentence of the law should not be pronounced upon them.

5th. The refusal of the court to instruct the jury on the request of the prisoners, "that if at the time of committing the burglary laid in the indictment, there was light enough to discern a man's face, it was not burglary."

6th. That the record, or caption of the indictment did not state by what judge, or at what place in Adams county, the court was holden at which the indictment was found, nor by what jurors, nor by what number it was found.

7th. The act of 1839, in force when the indictment was found, altered the penalty of the offense of burglary, substituting, instead of capital punishment, confinement in the penitentiary for a term according to the degree specified. The verdict in this case did not specify the degree of the offense.

*Baker* for the plaintiff in error.

The first error assigned is the unconstitutionality of the act organizing the court below. The first section of the 4th article of the constitution provides, " that the judicial power of this state shall be vested in one High Court of Errors and Appeals, and such other courts of law and equity as are hereafter *provided* for in this constitution." The 13th section of the same article provides, " that the state shall be divided into convenient districts, and each district shall contain not less than three nor more than twelve counties." The term *district* being used synonymously with circuit. The 14th section provides that " the circuit court shall have *original* jurisdiction in all matters, *civil* and *criminal*, within the state," etc. The 16th section

*provides* for the establishment of a "Court of Chancery," section 18th for a "Court of Probates," etc.

By the 24th section it is declared that "the legislature may from time to time establish such other *inferior* courts as may be deemed necessary." By this section the legislature supposed it had power to establish the criminal court. Now the constitutionality of this court depends upon the question whether it is or is not, in the sense contemplated by the framers of the constitution, an *inferior* court.

The mere fact that it is styled in the act an *inferior* court, does not make it such. To determine its grade and dignity, resort must be had to the matters over which it has jurisdiction. It is invested with jurisdiction, concurrent with the circuit courts, in all matters of a criminal nature, and thus becomes co-ordinate and co-equal in its powers over all matters confided to its jurisdiction, with the circuit court, and cannot, therefore, be said to be inferior to it. The mere fact of its being *limited* in jurisdiction to a certain portion of the matters confided to the circuit courts, does not *per se* render it *inferior*. If an appeal lay from the criminal court to the circuit court, then it will be admitted that the former would be inferior to the latter; the power of revisal being the true test of superiority. Such is, however, not the case, an appeal lying from both these courts alike, to the High Court of Errors and Appeals, they having concurrent jurisdiction over the same criminal matters.

2d. The record should show the *names* of the grand jurors, and that the indictment was found by at least twelve men. 1 Chitty's Crim. Law, 333; 2 Hale P. C., 167; Cro. Eliz., 654; 1 Chitty's Crim. Law, 202; Peck's Rep., 166; ib., 140. The record should show the return of the *venire facias*. Peck's Rep., 140–166. The record should show that the grand jurors were sworn *then* and *there*. 3 John. Cases, 265. The record should show that a "foreman" was sworn, and that the bill was returned through *him*, or else by the whole grand jury, with their return *specially* endorsed thereon. 3 How., 29; 1 How., 254; 1 Chitty's Crim. Law, 313; 4 Com. Dig., 643, 644, 645; 1 Chitty's Crim. Law, 330. The record should show the *place* as well as the *county* where the court was held. 3 How., 430.

3d. The court should have quashed the special *venire facias* issued in Jefferson county.    18 John. R., 212.

4th. The indictment ought to have been signed by the district attorney of the first judicial district.    1 How., 250 ; 3 Haywood, 98 ; Acts 1833, p. 88.

5th. The court erred in refusing the instruction asked for on behalf of the prisoner.    In the crime of burglary, time is of the essence of the offense ; it must be alleged to have been committed in the night time and so proved on the trial.    If there had been light enough to discern a man's face, it would not have constituted burglary.    1 Chitty's Crim. Law, 219, 293 ; 1 Hale, 549, 550 ; 10 Petersdorf, 504, 505 ; 4 Black. Com., 224 ; 4 Petersdorf, 744.

6th. It was not competent for the judge presiding (Hon. C. Rawlings, he not having been in commission at the time of trial before the jury), to pronounce judgment on the prisoners, at a subsequent term.    He could not judicially know that they were the same persons supposed to have been convicted at the previous term.    2 Hale, 401, 402, 403, 406, 407, note (C).

7th. The Hon. C. Rawlings having, previous to his election as judge of said court, been consulted and retained as counsel by the prosecutor, and having assisted the state on the trial of the prisoners, became interested in the prosecution, and unduly biased, and was therefore equally disqualified to preside in the case.    See act of 25th Dec., 1833.

8th, The prisoners should have been permitted to plead their *non-identity*.    1 Chitty's C. L., 443, 777 ; 3 Burrows, 1810 ; 2 Hale, 407.    This was the more necessary in this case, as the judge pronouncing the sentence, did not preside at the trial, and could not know with legal, judicial certainty that the prisoners were those supposed by the record to stand convicted.

9th. It was error in the court to sentence the prisoners capitally on the verdict of the jury in this case.    The act of 1839 had changed the punishment from capital to confinement in the penitentiary, and had also created several degrees of the crime of burglary, and the verdict did not specify of what degree the jury convicted.

*Thomas F. Collins*, attorney general.

It was competent for the legislature to create a criminal court. See Constitution, art. 4, sec. 24.   The plea of not guilty admits the jurisdiction of the court.   Chitty's C. L.   Though the caption of the record is incomplete, the record will be adjudged sufficient, if it appear in other parts of the same to contain the matter usually stated in the caption.   That which is uncertain in one part, may be rendered certain by that which is clear in another part.   3 How., 429.

A *venire facias* can in no case be quashed, except for partiality or corruption in the officer summoning the same.   See Republished Statutes of Miss., p. 578.

The act which prohibits circuit judges from presiding in cases wherein they were interested as counsel, does not apply to the criminal court.   There is no other judge with whom the criminal judge could interchange.   Condensed Statutes of Miss., 548–9 ; the statute prohibiting judges of criminal courts from presiding, is only directory ; and the error cannot be available in this court.

The plea of *non-identity* will not be regarded by the court, unless the record and plea show that the prisoner was out of custody after conviction and before sentenced.   1 Chitty Crim. Pl., 776 ; 3 Burrows, 1810 ; 1 Hale, 368 ; 1 Black. Rep., 4 ; Foster, 40.

Upon change of *venue* the clerk of the court should send only the original papers, and a writ of error to the county where the trial was had, will not reacth an error in the proceedings in the county from which the *venue* was changed.   Byrd v. The State, 1 Howard, 248 ; and see Woodsides v. The State, 2 How., 666.

Trotter, J. :

The statute of 1836 regards the criminal court as an inferior court, and so designates it. It makes it an inferior court to the circuit court by conferring upon the latter the authority to bring the record of any prosecution pending in the former, before them by a writ of *certiorari* whenever it is made to appear that injustice is likely to be done in the criminal court, and the cir-

cuit court, upon the removal of the record into it, is vested with
full power to hear and determine the cause.   Thus the circuit
courts are vested with full superiority and controlling power
over this court, and is thus superior to it, according to the rule
insisted on by the counsel for the prisoners.   But the criminal
court is inferior in point of jurisdiction in another sense, and in
the sense of the constitution as we think.   It is a tribunal of
limited jurisdiction, its powers being confined exclusively to
criminal proceedings.   It has no civil jurisdiction, and is there-
fore inferior to the circuit courts.   It is inferior to the high court
of errors and appeals, because a writ of error lies directly to it
from the appellate court.   In this point of view the circuit
courts are also inferior, and are so termed in the constitution.
It is not essential in order to sustain the authority of the legisla-
ture to create this court to consider it inferior in relation to the
circuit courts, or to any other courts created by the constitution,
save that of the court of errors and appeals.   For we appre-
hend that the power to establish and to abolish " all such infe-
rior courts" as the legislature may deem necessary, is unlimited,
save by the enumeration, which the constitution itself has made
of particular courts.   Such as are included in the enumeration,
are, of course, beyond the reach of legislative control.   Beyond
the enumeration the power is plenary, to create as many juris-
dictions inferior to the court of errors and appeals as may be
deemed expedient.   The constitution of 1817 vested the judi-
cial power of the state in one supreme court, and such inferior
courts of law and equity as the legislature should from time to
time, establish.   The legislature afterwards created a chancery
court, and also a court of probates.   The power to establish the
orphan's court and court of probates under the old constitution,
was never doubted, notwithstanding it was vested with a very
large portion of the mass of powers confessedly cognizable in a
court of chancery.   It was inferior to the chancery court.   It
was inferior to the chancery court in the amount of its juris-
diction, and because that court possessed the power to revise its
decrees; and it was inferior in its relation to the supreme court.
It was, therefore, one of the inferior courts authorized by the
constitution.   The new constitution of 1832, has by express

enactment, established the probate court and defined its jurisdiction. Yet it will scarcely be insisted, it is presumed, that if it had not done so, the hands of the legislature would be tied up against its creation. And yet, in regard to many subjects of its jurisdiction, it bears the same relation to the chancery court, which the criminal court does to the circuit courts. We are, therefore, clearly of opinion that this is fairly embraced in the provision of the twenty-fourth section of the fourth article of the constitution, and is a constitutional court.

2. It is next assigned for error, that the court below refused to set aside the special *venire facias* which is issued from the criminal court of Jefferson county. The first section of the act of 1836, entitled an act to amend the jury laws of this state, enacts "that no challenge to the array shall be sustained, nor shall any *venire facias* be quashed by any court of justice in this state for any cause whatsoever, except for corruption in the officer who may summon the jury. But there was no objection made to the sheriff, nor any improper conduct charged against him. The objection was merely to the form of the process, and was, therefore, properly disregarded.

3. The next error which we deem proper to notice, is the refusal of the judge who presided on the trial of this prosecution, to notice the exception taken to him on the ground of interest. He had previously, and whilst engaged in the practice of the law, been consulted and retained as counsel for the state by the prosecutor. The trial and conviction were had before he came upon the bench, and he did not consider himself precluded either by law or official delicacy from pronouncing the mere judgment of the law. Whatever might have been the more discreet course for the judge to pursue in these circumstances, or whether the reasons which influenced him were good, we are not required to decide. It is very clear that it was a question of discretion which belonged to him, and for the exercise of which his course is not subject to review in this court. We recognize the soundness and utility of the maxim that a judge should never sit to hear any cause when he is interested, nor when from any other circumstances, his mind may likely have received any bias or prejudice for or against either party. And

we may be indulged to remark that a judge should never act when there can be any just ground to impute partiality or pre-possessions either way. For, as was very justly remarked by the judge who delivered the opinion of the court in the case of Lyon v. The State Bank, reported in 1 Stewart's Ala. R., 464, where the same question was before the court, "The spirit of the law, the dignity of the state and the reputation of the judiciary demanded purity in the arbiters and impartiality in the administration of justice." It was in view, no doubt, of these considerations, that the statute law of this state has prohibited the judges from deciding causes in which they may have previously been interested as counsel. But sensibly as we may feel the influence of these reflections, and much as we may deplore the example, if it shall ever be set up of a judge who will boldly venture to sit in judgment upon the life, the liberty, or the property of the citizen, in circumstances calculated to create an interest deeper than that which arises out of a sense of the duty and responsibility of his station, we, yet, have no power to interpose. Redress by the party injured, can only be had in other forms, and the evil whenever it shall happen, can only be cured by an application of the powers of the other departments of the government. It is highly probable, in this case, that the judge did not conceive that there was any scope for the exercise of any power in which his discretion as a judicial officer was involved. But be this as it may, his judgment cannot for that reason be reversed. For it is well settled, that a "judge shall not be excepted against or challenged or have an action brought against him for what he does as judge." 1 Inst., 294. The supreme court of Alabama held this principle in the case before noticed, of Lyon v. the State Bank. The action was brought in the county court by the bank, and the judge who tried the cause then was one of the directors of the bank. The defendant challenged him on the ground of interest, but he refused to notice the objection and gave a judgment for the bank. This was assigned as error on an appeal to the supreme court, but it was not sustained; and there is a very obvious reason for it. There is no tribunal adequate to decide a challenge to the judge when made in his own court.

4th. The next error we shall notice is the conduct of the judge in refusing to allow the plea of non-identity. The correctness of this assignment of error depends upon the goodness of the plea. This plea, which in practice is interposed *ore tenus* at the bar of the court, is never allowed except in cases where the prisoner has escaped after verdict and before judgment, or after judgment and before execution. In this case it should not have been received, because the record does not show any escape. The prisoners were constantly in custody. It was, therefore properly treated as a nullity. 1 Chitty Cr. Law, 776 ; 3 Burr, 1870.

5th. The next assignment of error in the order we choose to consider them, is the refusal of the court below to instruct the jury as asked by the prisoner "that if at the time of committing the burglary laid in the indictment, there was light enough to discern a man's face, it was not burglary." The only question in regard to time in prosecutions for this crime, is whether it was committed in the *night time.* The instruction asked does not present that question. The light of the moon may sometimes be sufficiently brilliant, even at the still hour of midnight, to enable a man to discern another's face and to recognize his features. The instruction was properly refused.

6th. It is next assigned, as error, that the record or caption, of the indictment does not state by what judge, or at what place in Adams county the court was holden at which the indictment was found, nor by what number of jurors it was returned. The caption after giving the style of the court, and the term, proceeds to state that " the grand jury came into court and presented the following bill of indictment, and say they are content that the court shall alter therein anything, the same being matter of form and not of substance ;" and then it terminates. Nor does the record show in any other part of it of what number the grand jury consisted, or who they were, or how they were brought into court. It is the business of a caption of an indictment to state with sufficient certainty, not only the style of the court, the judge then presiding, but the time and place when and where it was found, and the jurors by whom it was found. 1 Chitty Cr. Law, 326 ; 2 Hawk., 346. There is wanting in this record a statement of facts essential to confer jurisdiction

upon the court below. And little as we feel disposed to entertain objections to form, yet we feel constrained in cases highly penal like this, to insist upon the observance of those rules which the constitutional law of this state has prescribed. No court is authorized to put the most humble citizen upon his trial for any capital or infamous crime, until a grand jury of the proper county, organized as the law directs, has preferred a formal accusation against him. Does the record in the Jefferson criminal court inform that court that these prisoners had been thus accused? It does not. And we therefore conclude that the indictment is bad for that reason. There are some errors assigned which we do not deem necessary to notice. It is proper, however, for us to observe, that the judgment must be reversed on another ground. The act of 1839 which was in force when the judgment was rendered in the court below, alters the penalty of this offense, and for the capital punishment under the old law, substitutes confinement in the penitentiary for a longer or shorter period according to the degree in which it has been committed. The statute defines three degrees of this crime, by particularly declaring the circumstances which constitute one or the other and before any judgment can be pronounced, it must be ascertained by verdict, in which of these degrees the defendants are guilty. The judgment must be reversed, and the prisoners remanded for further proceedings.